UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:12-cv-292-RJC

| | |
|---|---|
| LLOYD DONNELL WASHINGTON, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>FNU LAMBERT, et al., )<br>)<br>Defendants. )<br>_____ ) | <br><br><br><br><br>**ORDER** |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendants Evans, Kiker, and Lambert, (Doc. No. 33); and on Plaintiff's Motion to Compel, Motion for Sanctions, (Doc. No. 29).

**I.     BACKGROUND**

A.     Procedural Background

Pro se Plaintiff Lloyd Donnell Washington is a state court inmate currently incarcerated at Lumberton Correctional Institution. Plaintiff filed this action on May 2, 2012, pursuant to 42 U.S.C. § 1983, naming as Defendants Lanesboro Correctional Officer Kristopher Kiker, Lanesboro Correctional Officer Larnell Evans, and Lanesboro Sergeant Albert Lambert. (Doc. No. 1). Plaintiff claims that Defendants used excessive force against him during an incident occurring on February 14, 2012, while he was incarcerated at Lanesboro Correctional Institution.

Plaintiff originally filed this action in the Eastern District of North Carolina, but on May 8, 2012, the Eastern District of North Carolina transferred the action to this Court. (Doc. No. 2). On November 8, 2012, Plaintiff filed an amended complaint. (Doc. No. 17). On July 3, 2013,

the Court issued a Scheduling Order requiring that discovery in this matter be concluded by October 26, 2013, and that dispositive motions in this matter be filed by November 26, 2013. (Doc. No. 25). Upon the motion by Defendants, the Court granted the parties until January 17, 2014, to file dispositive motions. (Doc. No. 32). On November 8, 2013, after discovery had ended, Plaintiff filed the pending motion to compel and motion for sanctions. (Doc. No. 29).

On January 17, 2014, Defendants filed the pending summary judgment motion. (Doc. No. 33). On January 24, 2014, this Court entered an Order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), granting Petitioner fourteen days to respond to the summary judgment motion. (Doc. No. 35). On February 4, 2014, Petitioner filed a memorandum in opposition to the summary judgment motion. (Doc. No. 36).

B. Factual Background

1. Plaintiff's Allegations

Plaintiff alleges that while he was housed at Lanesboro Correctional Institution on February 14, 2012, Defendant Lambert stepped in his face and challenged Plaintiff to a fight. (Doc. No. 1 at 4). Defendant Lambert then went on to threaten Plaintiff and demanded that Plaintiff submit to handcuffs. (Id.). Plaintiff did not immediately comply with Lambert's orders because other officers were putting their weight on Plaintiff. Lambert then twisted Plaintiff's arm and forced him to submit to handcuffs. (Id.). Lambert then told Defendants Evans and Kiker to get Plaintiff out of his face. (Id.). Sometime during the altercation, Defendant Evans hit Plaintiff in the face with Evans' handcuffs. (Id. at 5). During the incident Defendant Kiker deployed his pepper spray against Plaintiff "for no reason at all." Plaintiff "was not showing any kind of resisting" during the entire incident. (Id.).

2

In his amended complaint, Plaintiff alleges that both Defendants Lambert and Evans challenged him to fight. (Doc. No. 17 at 3). The three Defendants took him down from behind, for no reason, and twisted his arms and legs while applying handcuffs. (Id. at 4). Defendant Evans hit him in the head with handcuffs, causing a gash. (Id.).

2. Defendants' Contentions

Defendants respond that the use of force against Plaintiff was not excessive, was conducted in accordance with the policies of the North Carolina Department of Public Safety, and was an appropriate amount of force to restrain Plaintiff, given his resistance and assault on the officers. (Doc. No. 33-1 at ¶¶ 16-18; 19: Affidavit of Larry Miller).

In support of their summary judgment motion, Defendants have submitted the affidavit of Larry Miller, the former Correctional Lieutenant at Lanesboro Correctional Institution who investigated Plaintiff's complaint of excessive force; videotape footage of the incident from February 14, 2012; a copy of the prison's policies and procedures for use of excessive force; the incident report of the altercation; and various witness statements. See (Doc. No. 33-1: Miller Aff. & Exs. A, B, and C). Defendants' summary judgment materials show that on February 14, 2012, while Plaintiff was housed at Lanesboro, he engaged officers and was subjected to a use of force in order to restrain Plaintiff and maintain order and control of Plaintiff, following Plaintiff's active resistance to and assault upon officers at Lanesboro.

According to the report of Captain Miller, on February 14, 2012, Plaintiff engaged in a verbal altercation with Defendant Evans in which he threatened Evans and began approaching Evans. (Doc. No. 33-1 at ¶ 10: Miller Aff.). Upon seeing the altercation, Defendant Lambert ordered Plaintiff to stop and submit to hand restraints. (Id. at ¶ 11). Plaintiff refused Lambert's

3

order. (Id.). Defendant Lambert issued a second order to submit to hand restraints. Plaintiff again refused, stated "fuck you" to Defendant Lambert, and began walking away from Lambert.

Plaintiff then continued through some sliding doors into the sally port, where Defendant Kiker ordered him to stop. (Id. at ¶ 12). Plaintiff refused to stop and then pushed Kiker. After Plaintiff pushed him, Kiker deployed his pepper spray against Plaintiff, spraying Plaintiff with two, half-second sprays. Apparently unaffected by the pepper spray, Plaintiff continued to move towards Kiker. Defendant Lambert ordered Kiker and Evans to take Plaintiff to the floor. (Id. at ¶ 13). Evans and Kiker restrained Plaintiff by using "control, restraint, and defensive techniques," or "CRDT," to guide Plaintiff to the floor and place him in restraints. (Id.). Plaintiff was then escorted to the segregation unit and seen by medical staff. (Id. at ¶ 14). According to medical staff, Plaintiff had a small abrasion above his right eye, but no other injury, and "no signs of distress." (Id. at ¶ 15; Doc. No. 33-1 at 23: Incident Report).

The surveillance video of the entire incident begins at 10:27:48 and ends approximately three minutes later at 10:30:58 with officers walking Plaintiff down the hall. There is no audio attached to the video footage, but the video footage corroborates Miller's report of the incident and it further contradicts Plaintiff's version of events. In the video, Plaintiff can be seen standing and talking to several officers before proceeding through the sally port. (Doc. No. 33-1: Ex. C to Miller Aff.). It shows Plaintiff entering the sally port doors as they are sliding closed, with a group of officers following closely behind. Then Plaintiff pushed one of the officers, identified by Defendants as Officer Kiker, and then walked towards Officer Kiker. Kiker backed away before deploying his pepper spray in Plaintiff's face. A second officer can be seen standing behind Plaintiff and attempting to deploy pepper spray just after Kiker deployed his. The video

4

shows officers surrounding Plaintiff. Just after the pepper spray was deployed, Plaintiff lunged quickly towards Officer Kiker, at which point another officer can be seen securing Plaintiff's hands behind his back and walking him out of the sally port.

The video then clearly shows that, as Plaintiff was escorted out of the sally port, he kicked at the officers who were escorting him out of the doors. Several officers took Plaintiff to the ground to restrain him. After the handcuffs were applied to Plaintiff, he continued to resist the officers as he was escorted down the hallway. Two of the officers had their hands on Plaintiff's shoulders and, as they walked Plaintiff down the hallway, Plaintiff pulled and tugged at them while he appears to be talking in an animated manner to one of the guards. No visible injury can be seen on Plaintiff.

### 3. Plaintiff's Summary Judgment Materials

Plaintiff submitted a very short brief in response to the summary judgment motion, but he has not submitted any evidence admissible on summary judgment such as sworn affidavits.[1] In his response brief, Plaintiff denies that he threatened any of the Defendants or that he did anything to provoke the Defendants' use of force against him, and he further complains that Defendants did not sufficiently respond to Plaintiff's discovery requests.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a

---

[1] As the Court discusses, infra, Plaintiff's complaint and amended complaint are verified. The Court will consider the allegations in these pleadings as Plaintiff's evidence in opposition to the summary judgment motion.

5

verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id. The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. Id. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. Id. at 249-50.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III. DISCUSSION

A. <u>Plaintiff's Pending Motion to Compel and Motion for Sanctions</u>

The Court first addresses Plaintiff's Motion to Compel and Motion for Sanctions. In support of the motion, Plaintiff contends that Defendants have failed to comply with Plaintiff's discovery requests by failing to answer any of Plaintiff's interrogatories by the date of the close of discovery, October 26, 2013. On August 13, 2014, this Court entered an order requiring Defendants to respond to Plaintiff's motion. On August 25, 2014, Defendants filed their response, in which they concede that they inadvertently failed to respond to Plaintiff's interrogatories.

The Court will deny Plaintiff's motion. He has already been given the information requested in the interrogatories, and the information sought can be ascertained from the documents submitted by Defendants in support of their summary judgment motion, including the video footage of the alleged incident of excessive force. Furthermore, some of the interrogatories sought employment information about the named Defendants that was irrelevant to the issue of excessive force. Finally, because Defendants raised qualified immunity as a defense, they were entitled to a decision on qualified immunity before engaging in lengthy discovery.[2]

---

[2] The Court observes, however, that prisoner pro se litigants do not forfeit their rights to civil discovery merely by virtue of their incarceration. Indeed, they have the same right to discovery as non-incarcerated litigants. Defendants in prisoner litigation are obligated to respond to the requests, raising objections where appropriate. They are not free to simply ignore the requests. If Defendants wish to postpone discovery until after the Court adjudicates the qualified immunity issue, they, like other litigants, must file a motion seeking such postponement. These are known rules of procedure and discovery; yet in this and other recent Section 1983 actions filed in this district, the named defendants have simply ignored the prisoner plaintiffs' discovery requests altogether. Then, when the prisoner files a motion to compel discovery, the named Defendants also neglect to respond to the motion. Of course, this is not acceptable, and perhaps sanctionable, upon further occurrence.

B.  Plaintiff's Eighth Amendment Excessive Force Claim

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986).  To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind.  Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).  In adjudicating an excessive force claim, the court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and whether the force was "applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm."  Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973); see also Whitley v. Albers, 475 U.S. 312, 320-21 (1986).  Furthermore, the Supreme Court has recently reiterated that "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."  Wilkins v. Gaddy, 130 S.Ct. 1175, 1178-79 (2010) (per curiam).  In Wilkins v. Gaddy, the Supreme Court observed:

> This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." The extent of injury may also provide some indication of the amount of force applied. As we stated in Hudson, not "every malevolent touch by a prison guard gives rise to a federal cause of action." "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim.

8

> Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts.

Id. at 1178-79 (citations omitted).

Here, Plaintiff has failed to raise a genuine issue of material fact as to whether excessive force was used against him. First, the record evidence, including the video footage, supports Defendants' contentions that Plaintiff actively resisted officers and willfully refused officers' orders. As the Court has already noted, Plaintiff did not submit any sworn affidavits on summary judgment—either his own affidavit or affidavits from inmates who witnessed the event—to corroborate his version of events. Plaintiff's complaint and amended complaint are, however, verified. When a plaintiff files a verified complaint, the complaint functions as an opposing affidavit for summary judgment purposes as long as the allegations in the complaint are based on personal knowledge. See Davis v. Zahradnick, 600 F.2d 458, 459-60 (4th Cir. 1979). To the extent that the allegations made in Plaintiff's verified complaint and amended complaint contradict the events as shown by the videotape footage of the incident, this Court must "view[] the facts in the light depicted by the videotape." See Sawyer v. Asbury, 537 Fed. Appx. 283, 291 (4th Cir. 2013) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007) (stating that when "opposing parties tell two different stories, one of which is blatantly contradicted" by video evidence contained in the record, "so that no reasonable jury could believe it, a court should not adopt that version of the facts....").

Here, the videotape footage of the incident blatantly contradicts Plaintiff's allegations in the complaint and amended complaint that Officer Kiker pepper-sprayed Plaintiff "for no reason;" that Defendant Evans hit Plaintiff in the face with Evans' handcuffs; and that Plaintiff "never even once showed any kind of resisting, the whole time in which the event/matter was going on."

9

(Doc. No. 1 at 5; Doc. No. 17 at 4). To the contrary, the videotape footage clearly shows Plaintiff pushing Officer Kiker and then lunging towards him in a threatening manner after coming through the sliding doors. The video footage further shows Officer Kiker first attempting to use pepper spray rather than hands-on force to stop Plaintiff from resisting. However, Defendant Kiker's efforts to control Plaintiff's behavior with pepper spray did not work, as Plaintiff continued to resist and refused to submit to orders.

Furthermore, the video footage shows that Plaintiff continued to display resistance by kicking at officers before officers brought him to the floor to apply handcuffs. Nowhere in the video footage can Evans or any other officer be seen hitting Plaintiff in the face with handcuffs. It is true that, at the very end of the video footage, while the officers were putting their weight on Plaintiff to apply handcuffs, Plaintiff's face is not visible. However, to the extent that Plaintiff was inadvertently hit with Evans' handcuffs during the scuffle, thus causing the abrasion above Plaintiff's eye, there is simply no record evidence raising a genuine issue of fact as to whether, as Plaintiff alleges, Evans intentionally hit Plaintiff in his face with handcuffs maliciously and sadistically for the very purpose of causing harm.

In sum, the evidence on summary judgment shows that the need for force and the amount of force used were closely matched, as the officers used no more than minimal, hands-on force, applied in a good-faith effort to stop Plaintiff's resistance after he refused to submit to orders. Finally, the undisputed medical record evidence shows that Plaintiff's suffered minimal injuries from the encounter. Although it is clear after <u>Wilkins v. Gaddy</u> that the extent of injury is only one factor in an excessive force analysis; it is a factor. The evidence submitted by Defendants shows that Plaintiff had a small abrasion above his right eye as a result of the incident. He had

no other signs of distress. (Id.). The fact that Plaintiff suffered only minimal injury, consisting of a small abrasion above his right eye, corroborates the video tape evidence and supports the Court's finding that Defendants are entitled to summary judgment on Plaintiff's excessive force claim.

Plaintiff has failed to raise a genuine issue of material fact as to whether Defendants used excessive force against him. Defendants are entitled to summary judgment.[3]

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Summary Judgment, (Doc. No. 33), is **GRANTED**;

2. Plaintiff's Motion to Compel, Motion for Sanctions, (Doc. No. 29), is **DENIED**; and

3. The Clerk of Court is directed to close this case.

Signed: September 17, 2014

Robert J. Conrad, Jr.
United States District Judge

---

[3] Defendants have also raised the issue of qualified immunity. The Court finds that, even if it were to conclude that Defendants violated Plaintiff's constitutional rights, which it has not, here, it was most certainly not clearly established that the conduct used by Defendants constituted excessive force. Thus, even if Plaintiff were to overcome summary judgment on the excessive force claim, Defendants would still be entitled to qualified immunity.